502 So.2d 1067 (1987)
GUARANTY BANK OF MAMOU
v.
COMMUNITY RICE MILL, INC., and Estate of A.G. LaHaye, et al.
No. 86-C-1510.
Supreme Court of Louisiana.
February 23, 1987.
Rehearing Dismissed March 25, 1987.
*1068 David F. Dwight, Robert J. Tete, Jones, Tete, et al., Raymond LeJeune, Donald Soileau, Soileau & LeJeune, for plaintiff-appellant.
Michael H. Rubin, Rubin, Curry, et al., J. Winston Ardoin, Michael V. Matt, for defendant-respondent.
MARCUS, Justice.
This case arises from a lawsuit filed by Guaranty Bank of Mamou (Bank) against Community Rice Mill, Inc. (Mill) and the Estate of A.G. LaHaye (Estate) in which the Bank alleged that it was the holder of various promissory notes executed by the Mill through its authorized representative and president, LaHaye. In its petition, the Bank also sought recognition of various mortgages and pledges securing payment of the notes and asserted its claim pursuant to a continuing guaranty executed by LaHaye.[1]
A consent judgment in the amount of $1,073,000.00 together with accumulated interest on each note, attorney fees in the amount of twenty-five percent (25%) of the principal and interest, and costs was rendered in favor of the Bank and against the Mill. The judgment further recognized all mortgages and privileges on the Mill's property which secured the debt. Additionally, the rights of the Bank against the Estate pursuant to the continuing guaranty were specifically reserved for separate trial. This judgment is now definitive.
The Bank then had the collateral seized under a writ of fieri facias (fi.fa.). Appraisals of the seized property were made, after which a judicial sale was held. The Bank bid in the property at two-thirds of its collective appraised value ($809,848.00) and was declared owner of all property seized pursuant to the writ of fi.fa. The writ reflected the total principal debt, interest, attorney fees, and costs as provided in the judgment. This total writ amount of $1,597,708.95 was credited in the amount of $539,899.00, the sale price of the Mill's property, leaving a balance of $1,057,809.95, *1069 for which the writ was returned unsatisfied.
Thereafter, the Bank filed a first supplemental and amending petition specifically naming the heirs of A.G. LaHaye: Glenn LaHaye, George Wayne LaHaye, Emily Deshotel LaHaye and Flora Jane LaHaye Devillier (Heirs) as defendants seeking recovery under the aforementioned continuing guaranty. After trial on the merits, judgment was rendered in favor of the Bank and against the Estate and Heirs "in the amount of $282,000.00 plus all interest, 15% attorney fees on the above amount, plus all costs incurred in the suit." This judgment was based on the continuing guaranty agreement executed by LaHaye in which LaHaye guaranteed the Mill's debt to the Bank up to the amount of $282,000.00 plus interest, attorney fees, and costs. The Estate and Heirs suspensively appealed this judgment.
The court of appeal reversed. It first found that the judgment rendered against the Estate and Heirs was a deficiency judgment. The court then concluded that because of alleged irregularities in the appraisal process of the seized property, La. R.S. 13:4106-07 (the Deficiency Judgment Act) precluded the Bank from procuring such a judgment against the Estate and Heirs. The court relied on La. Code Civ.P. art. 2332, which requires that the property seized under a writ of fi.fa. be appraised according to law prior to the sale and on La.R.S. 13:4363(A), which requires that appraisals of the property to be sold be delivered to the sheriff at least two days before the sale. In this case, the appraisal was delivered to the sheriff on the day of the sale. Concluding that an untimely appraisal is tantamount to none at all, the court held that inasmuch as a deficiency judgment against the principal debtor, the Mill, would be prohibited by the Deficiency Judgment Act, a suit against the surety for the deficiency is likewise prohibited. Accordingly, the suit by the Bank against the Estate and Heirs on the continuing guaranty was dismissed.[2] On the Bank's application, we granted certiorari to review the correctness of that decision.[3]
According to La. Code Civ.P. art. 2771, a deficiency judgment is obtainable against the debtor after distribution of the proceeds of a judicial sale only if the property has been sold under an executory proceeding after appraisal in accordance with La. Code Civ.P. art. 2723. Article 2723 requires that all property seized pursuant to a writ of seizure and sale be appraised unless such appraisal has been waived in the act evidencing the mortgage or privilege. The article applies to property seized pursuant to a writ of seizure and sale in an executory proceeding. If the distribution of the proceeds from such a judicial sale is insufficient to satisfy the debt for which the property was sold, the creditor, under certain circumstances, may proceed against the debtor to obtain a judgment to cover the deficiency. This judgment is referred to as a deficiency judgment. However, the property in this case was not seized and sold pursuant to a writ of seizure and sale in an executory proceeding. Rather, it was seized and sold pursuant to a writ of fi.fa. A writ of fi.fa. is issued directing the sheriff to seize and sell certain of the judgment debtor's property after the creditor has obtained a judgment in an ordinary proceeding against the debtor. This procedure is simply a form of execution of the judgment. At no time did the Bank utilize executory proceedings against the Mill or the Estate and Heirs as guarantors of the Mill's debts. Therefore, we do not agree with the court of appeal's determination that the judgment rendered against the Estate and Heirs is a deficiency judgment.
We must next consider whether the Deficiency Judgment Act is ever applicable to a situation where the property sold pursuant to a writ of fi.fa. is insufficient to satisfy a judgment. If so, we would then address whether the Act is applicable in the instant case in which the Estate and Heirs seek discharge from their obligation under the *1070 continuing guaranty because of alleged irregularities in the appraisal process of the judgment debtor's property which was seized and sold pursuant to a writ of fi.fa.
La.R.S. 13:4106-07 (the Deficiency Judgment Act) as it existed at all times relevant to this case provided:
§ 4106. Deficiency judgment prohibited if sale made without appraisement
If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.
If a mortgage or pledge affects two or more properties, movable, immovable, or both, the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby. As amended Acts 1952, No. 20, § 1; Acts 1960, No. 32, § 1. § 4107. R.S. 13:4106 cannot be waived; operation prospective
R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934.[[4]]
The Act is located in Chapter 21 of Title 13 of the Revised Statutes entitled "Executory Process." Although it does not expressly limit its provisions to executory proceedings, a close reading of its provisions reveals its intent to apply to situations in which executory proceedings are used.
The first sentence of La.R.S. 13:4106 provides that "[i]f a mortgagee or other creditor takes advantage of a waiver of appraisement of his property ... by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor." (Emphasis supplied.) The waiver of appraisement referred to in the Act is statutorily sanctioned by La. Code Civ.P. art. 2723. This article applies when property is sold in an executory proceeding provided that the waiver appears in the act evidencing the mortgage or privilege, the creditor has prayed that the property be sold without appraisal, and the order directing the issuance of the writ of seizure and sale has directed that the property be sold as prayed for. There is no statutory provision for a judgment debtor's waiver of appraisement when his property is seized and sold pursuant to a writ of fi.fa. See La. Code Civ.P. art. 2332. Therefore, a judgment creditor may not take "advantage of a waiver of appraisement" by a judgment debtor when his property is seized and sold pursuant to a writ of fi.fa. Additionally, the first sentence of La.R.S. 13:4106 refers to a "mortgagee or other creditor," the "debt for which the property was sold" and the "debt [standing] fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor." In an executory proceeding, the term "debt" appropriately describes the nature of the creditor's claim against the debtor at the time the debtor's property is sold pursuant to a writ of seizure and sale. This is because at the time of the judicial sale under executory proceeding, there has been no judgment rendered in favor of the creditor. However, *1071 when the debtor's property is sold pursuant to a writ of fi.fa., the debtor is a judgment debtor, that is, the debt has been replaced by a judgment procured in an ordinary proceeding in favor of the judgment creditor. By using the terms "debtor," "creditor," and "debt" in the Act without any reference to "judgment debtor," "judgment creditor," and "judgment," the legislature has evidenced an intent that the Act apply to executory proceedings. Cf. La.Code Civ.P. arts. 2291, et seq.
Finally, the second paragraph of La.R.S. 13:4106 has no application to an ordinary proceeding. The language effectively extends a creditor's right to have the debtor's property mortgaged in his favor seized and sold in an executory proceeding, despite any appraisal irregularities in the previous sale of the debtor's other mortgaged property. Language directly preceding that paragraph, however, bars any further action by the creditor against the debtor to satisfy the debt. On the other hand, when a judgment is rendered in an ordinary proceeding, a judgment creditor is not so limited in his efforts to secure satisfaction of that judgment. Unless the judgment debtor enjoins a judicial sale of his property under La.Code Civ.P. art. 2298, the judgment creditor may continue to have the judgment debtor's property seized and sold until the judgment is satisfied despite any appraisal irregularities respecting the property previously sold.
Accordingly, we do not consider that the legislature intended the Deficiency Judgment Act to apply to situations where property sold pursuant to a writ of fi.fa. is insufficient to satisfy a judgment. The language of the Act clearly evidences its intent to apply to the procurement of a deficiency judgment following a judicial sale pursuant to a writ of seizure and sale issued in an executory proceeding. See Oak Cliff Bank and Trust Co. v. Kittle, 309 So.2d 742 (La.App. 4th Cir.1975); Hagedorn Motors, Inc. v. Jones, 280 So.2d 643 (La.App. 1st Cir.) writ refused, 282 So.2d 516 (La.1973). Therefore, the issue of whether there was an irregularity in the appraisal process of the judgment debtor's property in the instant case is of no moment since this judicial sale was not conducted in an executory proceeding pursuant to a writ of seizure and sale but instead was conducted pursuant to a writ of fi.fa. following the rendition of a judgment. The Estate and Heirs may not rely on the Deficiency Judgment Act to support their claim of discharge under the instant continuing guaranty.[5] Hence, we find the continuing *1072 guaranty to be valid and enforceable against the Estate and Heirs.
The Estate and Heirs alternatively argue that in the event this court finds the continuing guaranty enforceable, the guarantors are liable for interest only on the guaranteed portion of the principal debt of $282,000.00 and not upon the entire principal debt of $1,073,000.00 as reflected in the judgment rendered against the Mill. Additionally, they contest the judgment as to the amount of attorney fees rendered against them. As the court of appeal dismissed the Bank's suit against the Estate and Heirs based upon the continuing guaranty, it did not address these issues. We therefore consider it more appropriate to remand the case to that court for it to decide these issues.

DECREE
For the reasons assigned, the judgment of the court of appeal dismissing Guaranty Bank of Mamou's suit against the Estate of A.G. LaHaye and the LaHaye heirs, Glenn LaHaye, George Wayne LaHaye, Emily Deshotel LaHaye and Flora Jane LaHaye Devillier, is reversed. The case is remanded to the court of appeal for further proceedings consistent with the views herein expressed.
DIXON, C.J., and DENNIS, J., concur with reasons.
LEMMON, J., concurs and assigns reasons.
WATSON, J., concurs, but would prefer not to remand, being of the opinion that the issues of interest and attorney fees are easily resolved; interest only on the amount of the guarantee and the fees are reasonable.
DIXON, Chief Justice (concurring).
I respectfully concur.
"Executory proceedings" can well be understood to mean proceedings in execution of a judgment. To require appraisal in all judicial sales is not unwise, and for years has been considered to be a requirement of law by courts of appeal. In my opinion, the "deficiency judgment act" is and should be applicable to all judicial sales. Nevertheless, the lack of an appraisal results in the discharge of the debt sued on only "insofar as it constitutes a personal obligation of the debtor," and need not discharge the continuing guarantors. Therefore I concur in the result.
LEMMON, Justice, concurring.
The deficiency judgment limitation is needed in executory proceedings in Louisiana in order to protect the interest of the debtor when the creditor avails himself of La.C.C.P. art. 2723 and prays for sale without appraisal (after the debtor has waived appraisal in the mortgage), thus enabling the property to be sold without the mandatory minimum bid requirement applicable in judicial sales in execution of judgments. Without this protection, the creditor, who may be the only bidder in depressed economic times, would be able to buy in the property for costs and thereby become the owner both of the property and of the debt enforceable against the debtor personally.
This protection is not needed in a judicial sale under a writ of fieri facias, since the interest of the debtor is otherwise protected by the mandatory appraisal requirement of La.C.C.P. art. 2332 and the mandatory minimum bid requirement of La.C.C.P. art. 2336.[1] These safeguards serve the same *1073 purpose in judicial sales in execution of judgments as the deficiency judgment limitation serves in judicial sales in executory proceedings. Inasmuch as there was an appraisal in the present case which reflected true market value and the debtor's property was sold at the mandatory minimum two-thirds of its appraised value, this debtor's interest was adequately protected.
NOTES
[1] After Mr. LaHaye's death, his heirs unconditionally accepted his succession and were later made additional defendants.
[2] 490 So.2d 736 (La.App. 3d Cir.1986).
[3] 494 So.2d 1164 (La.1986).
[4] The provisions of the Deficiency Judgment Act have been amended by Acts 1986, No. 489, § 2 by the enactment of La.R.S. 13:4108 and 4108.1. The effective date of these statutes is August 30, 1986. Judgment was rendered against the Estate and Heirs on October 10, 1984. Hence, these amendments are not applicable to the instant case. The preamble to Act No. 489 states: "[t]o amend and reenact R.S. 13:4103 and to enact R.S. 13:4108 and 4108.1 relative to executory process...." (Emphasis supplied.) This language indicates the legislature's intent that the Deficiency Judgment Act apply to executory proceedings.
[5] The Estate and Heirs raise several alternative arguments respecting the continuing guaranty which they contend also support the result reached by the court of appeal. They contend that the continuing guaranty is ambiguous on its face as to which of the Mill's debts it secures for two reasons. First, they contend that the language of the continuing guaranty may be construed as guaranteeing only the first $282,000.00 of the Mill's indebtedness to the Bank. Since the proceeds from the sale of the Mill's property exceeded this amount, they claim that their obligation under the guaranty has been discharged. However, the continuing guaranty unequivocally guarantees "payment in full, of any indebtedness, direct or contingent, whether secured or unsecured, of said debtor up to the amount of TWO HUNDRED EIGHTY-TWO THOUSAND AND NO/100 ($282,000.00) DOLLARS, plus all interest, attorney's fees, other fees, and charges of whatsoever nature or kind, whether due or to become due and whether now existing or hereafter arising." This language evidences the guarantor's intent to secure any of the Mill's debts to the Bank up to the dollar limit expressed therein. Therefore, this claim is without merit.

Second, they argue that the guaranty instrument must be interpreted in light of the Bank's practice of recording on each of its debt instruments the collateral securing payment of that debt. Because the only note on which the Bank listed the continuing guaranty as security was one which was marked "paid" before this suit was filed, the Estate and Heirs contend that their obligation under the guaranty is satisfied. The continuing guaranty agreement alone evidences the parties' intent as to which of the Mill's debts it secured. Since the above quoted language in the guaranty agreement does not limit the guarantor's liability to any particular debt instrument, this claim also lacks merit.
Finally, the Estate and Heirs contend that the Bank's practice of recording on each note any collateral securing its payment coincided exactly with the then-applicable provisions of La.R.S. 6:239 (repealed by Acts 1984) which required this practice of banking associations and savings banks. They argue that the Bank's failure to list the continuing guaranty on all but one of its notes should prohibit it from enforcing the guaranty as to those debts on which the guaranty was not specifically listed. Even if one considers a continuing guaranty to be "collateral" and therefore subject to the requirements of La.R.S. 6:239, the statute penalized non-compliance by the imposition of a fine upon certain banking officials. The statute did not contemplate invalidating all collateral security not so listed as required. Hence, this argument likewise lacks merit.
[1] Arguably, this protection falls short when there is no minimum bid at the first offering and the property is sold for costs at the second offering. Perhaps it would be preferable to require a minimum credit against the debt of two-thirds of the appraised value when the second offering brings a lesser bid, but that question is not before us in this case and may be a matter for the Legislature to address.