546 So.2d 637 (1989)
RAYNE STATE BANK AND TRUST COMPANY, Plaintiff-Appellee,
v.
Flossie Martin FRUGE, et al., Defendants-Appellants.
No. 88-308.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1989.
*638 Reggie, Harrington & Boswell, Oscar W. Boswell II, Lafayette, for plaintiff/appellee.
Malcom Brasseaux, Church Opint, for defendants/appellants.
Before STOKER, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
This appeal concerns the seizing of community funds to satisfy a judgment against the wife.
Mark Rufus Fruge appeals the trial court's dismissal on a peremptory exception of no cause of action of his petition for a preliminary injunction and a petition to annul a $350,000 default judgment rendered against his wife, Flossie Martin Fruge. The trial court ruled that Rayne State Bank and Trust Company (Rayne State) was permitted to execute its judgment against all the community property owned by the Fruges.
Mr. Fruge, who was not a party to Rayne State's suit against Mrs. Fruge, contends that the trial court erred: (1) in sustaining Rayne State's exception of no cause of action; and, (2) in declaring the default judgment against Mrs. Fruge enforceable against their community property.

*639 FACTS
Between September 30, 1985, and October 2, 1986, Mrs. Fruge executed three continuing guaranty agreements for her son's company, Apple Service, Inc., in favor of Rayne State. Apple Service eventually defaulted on its loans.
On April 27, 1987, Rayne State filed suit against Mrs. Fruge on the continuing guaranties she executed. The record reflects that she was personally served on April 28, 1987. After Mrs. Fruge failed to answer the lawsuit, a judgment by default was entered against her on May 21, 1987, and the default was confirmed on May 28, 1987.
Mrs. Fruge did not tell her husband that she signed the continuing guaranties or that she was sued. He had no knowledge of Mrs. Fruge's activity in this regard. In his brief, he states that he had always managed the financial affairs of the community.
On July 31,1987, Rayne State filed a rule to show cause against Mr. Fruge, seeking a declaration that its judgment against Mrs. Fruge was enforceable against certain community funds in Mr. Fruge's name which were deposited in Rayne State. Subsequently, Rayne State amended its rule, asking for a judicial declaration that its judgment could be executed against all community property of Mr. and Mrs. Fruge.
Mr. Fruge, alleging fraud and ill practices, filed a petition to annul the default judgment, and sought the issuance of a preliminary injunction, restraining Rayne State from enforcing its judgment against the community property. Rayne State interposed peremptory exceptions of no cause of action and no right of action to Mr. Fruge's petition.
Mr. Fruge's petition and Rayne State's exceptions were consolidated for hearing. The matter was submitted on the record. The trial court maintained Rayne State's exception of no cause of action and recognized Rayne State's right to enforce its judgment against the Fruges' entire community.

NO CAUSE OF ACTION
Mr. Fruge contends that he was a party interested in opposing the effect of the judgment against Mrs. Fruge and that the trial court erred in dismissing his petition for nullity because of the failure to state a cause of action.
An exception of no cause of action is tried solely on the petition and attached documents. In ruling on a peremptory exception of no cause of action, the trial court must accept all well pleaded facts in the petition and attached documents as true, and must resolve any doubt in favor of the sufficiency of the pleadings to state a cause of action. Meldean's, Inc. v. Rivers, 410 So.2d 837 (La.App. 3rd Cir.1982), writ denied, 414 So.2d 376 (La.1982).
The cause of action in the case sub judice is an action for nullity. Defendant urged the trial court to annul the judgment against Mrs. Fruge under two broad categories: one, involving Rayne State's failure to include him as a party defendant; and that Rayne State's judgment was acquired by fraud and ill practices.
LSA-C.C.P. Art. 2002 provides in pertinent part:
"A final judgment shall be annulled if it is rendered:

* * * * * *
(2) Against a defendant who has not been served with process as required by law and who has not entered a general appearance, or against whom a valid judgment by default has not been taken; or

* * * * * *
Except as otherwise provided in Article 2003, an action to annul a judgment on these grounds may be brought at any time."
Mr. Fruge contends he was an indispensable party to Rayne State's suit against Mrs. Fruge. In the alternative, Mr. Fruge argues that the failure to make him a defendant in the action against Mrs. Fruge violated the due process clause of the United States Constitution.
We note from the outset that Rayne State's action against Mrs. Fruge was not *640 an action to enforce a claim against the community, but rather to determine her liability to the bank with regard to the continuing guaranties she signed.
Each spouse acting alone may manage, control, or dispose of community property unless otherwise provided by law. LSA-C.C. Art. 2346. The concurrence of both spouses is required for the alienation, encumbrance, or lease of community immovables, furniture or furnishings while located in the family home, and all or substantially all of the assets of a community enterprise. LSA-C.C. Art. 2347.
Using C.C. Art. 2347, Mr. Fruge contends that one spouse cannot incur an obligation that, when reduced to judgment, will encumber the community. We disagree.
Comment (a) to LSA-C.C. Art. 2347, quoted with approval in Magee v. Amiss, 502 So.2d 568 (La.1987), explains the word, encumbrance, as follows:
"(a) Encumbrances imposed by law are not subject to the requirement of concurrence by the spouses. Thus, a transaction by one of the spouses acting alone may give rise to a vendor's privilege, or a mechanic's or materialman's lien on community property. Likewise, the recordation of a judgment against a spouse gives rise to a judicial mortgage on community property situated in the parish in which recordation takes place."
A continuing guaranty, treated jurisprudentially as a contract of suretyship, King Musical Instruments, Inc. v. Arceneaux Music, 441 So.2d 786 (La.App. 3rd Cir. 1983), is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so. LSA-C.C. Art. 3035. Considering the foregoing, it is clear that Mrs. Fruge's guaranty did not encumber the community. Accordingly, the concurrence of Mr. Fruge was not required.
Moreover, once Rayne State obtained its judgment against Mrs. Fruge, the judgment could be satisfied during the community property regime from community property and from Mrs. Fruge's separate property. LSA-C.C. Art. 2345.
Furthermore, Rayne State was not required to join Mr. Fruge because under LSA-C.C.P. Art. 735 "[e]ithe:r spouse is the proper defendant, during the existence of the marital community, in an action to enforce an obligation against community property; ... When only one spouse is sued ..., the other spouse is a necessary party...." In the present case, Rayne State sued Mrs. Fruge to determine her liability to it for the guaranties she signed. As noted above, since these guaranties did not alienate, encumber or lease community property as delineated in LSA-C.C. Art. 2347, Mr. Fruge's concurrence was not required. Thus, Rayne State was not required to join Mr. Fruge as a defendant to its action involving the guaranties Mrs. Fruge signed. Shel-Boze, Inc. v. Melton, 509 So.2d 106 (La.App. 1st Cir.1987).
Therefore, we find no merit to Mr. Fruge's contentions that his signature was required on the guaranties, and that he should have been made a defendant in the action against Mrs. Fruge.[1]
Mr. Fruge next contends that Rayne State obtained its judgment against Mrs. Fruge by fraud and ill practices.
LSA-C.C.P. Art. 2004 directs that any final judgment obtained by fraud and ill practices may be annulled. In Johnson v. *641 Jones-Journet, 320 So.2d 533 (La.1975), the court recognized that actionable fraud or ill practice is found when the circumstances under which the judgment is rendered show the deprivation of legal rights of the party seeking relief and enforcement of the judgment would be unconscionable.
The Louisiana Supreme Court defined the breadth of LSA-C.C.P. Art. 2004 in Kem Search, Inc. v. Sheffield, 434 So.2d 1067, 1070 (La.1983), as follows:
"Thus, the article is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable." (Citations omitted.)
As further explanation of this basis for the action of nullity, the jurisprudence has recognized that the absence of a valid and sufficient reason for a party's failure to defend a suit in which a default judgment was taken precludes that party from later maintaining an action for nullity based on fraud or ill practices which could and should have been pleaded in the original suit. Phillips v. Patin, 517 So.2d 190 (La. App. 1st Cir.1987).
A close reading of Mr. Fruge's petition reveals three general categories which he classifies as Rayne State's fraud and ill practices. First, he contends that he did not know of the suit against his wife and that his concurrence was needed on the guaranties. We have rejected this argument for reasons stated above. We likewise find no merit to his contention that he did not know of the suit against his wife. Since Mr. Fruge was not an indispensable party to that action, his lack of knowledge of that action is inconsequential. Secondly, Mr. Fruge argues that his wife was misled when she signed the guaranties and she received no consideration for signing them. These contentions constitute defenses which Mrs. Fruge could have raised in answer to Rayne State's action and, as such, are not grounds which entitle him to annul the default judgment against his wife. Lastly, Mr. Fruge levels three allegations against Rayne State: (1) it took Mrs. Fruge's guaranties knowing that the loans made to Apple Service, Inc. were otherwise backed with insufficient collateral; (2) Mrs. Fruge's separate assets were minimal and community property would have to be seized to enforce judgment; and, (3) it made the loan to Apple Service only because it knew Mrs. Fruge had money. These allegations center on Rayne State's decision to finance Apple Service's loan request and do not constitute any fraud or ill practices by Rayne State in the procurement of its judgment against Mrs. Fruge.
Therefore, we find, as did the trial court, that Mr. Fruge failed to state a cause of action in nullity because of fraud and ill practices in obtaining the judgment.

DUE PROCESS
Mr. Fruge contends that if Rayne State can execute its judgment against all of the Fruges' community property that such action constitutes the unlawful taking of his property without due process.
Although we have decided that Mr. Fruge's concurrence was not required on the guaranties and he was not an indispensable party to the action against Mrs. Fruge, Mr. Fruge, as the owner of a legally protected property interest in the community property was entitled to notice prior to the execution of judgment by Rayne State against community property. Magee, supra at page 571.
In Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 2712, 77 L.Ed.2d 180 (1983), the United States Supreme Court stated:
"Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable."
In the case sub judice, after the suspensive appeal period lapsed, Rayne State filed a summary proceeding against Mr. Fruge, asking him to show cause why the judgment against Mrs. Fruge should not be *642 executed against community property in which he had an interest. Mr. Fruge was served with this rule, and filed the responsive pleadings which form the basis of this appeal. We find the rule served as adequate notice to Mr. Fruge, therefore, there was no violation of due process.
Before closing, we find it necessary to make additional comments relative to the hearing on Rayne State's rule to show cause. At that hearing, the litigants submitted the case on the record and put on no live testimony. Counsel for both parties told the trial court that none was permitted. Rayne State's argument to this effect was correct as to its exception of no cause of action since the taking of evidence is specifically prohibited. LSA-C.C.P. Art. 931. However, with regard to Rayne State's rule to show cause filed against Mr. Fruge, we find no prohibition against the taking of testimony in support of or in opposition to the rule. Nevertheless, we hasten to add that despite this finding, our rulings on the issues presented by Mr. Fruge are not affected.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Mr. Fruge.
AFFIRMED.
NOTES
[1] In reaching these conclusions, we find the remarks of Nina Nichols Pugh in Women in Louisiana Law, 42 Louisiana Law Review 1571, at 1575-1576, (1982), particularly applicable:

"The wife may now obligate the community funds, not only for the debts she creates during the marriage, but also for her antenuptial debts, just as in the case of the husband under the prior law. The common funds are now available to creditors of both husband and wife during marriage, and an individual spouse's creditors may seek satisfaction from the community assets in the possession or control of either spouse, as well as from the separate assets of the debtor-spouse. Married women, formerly wailing for access to onehalf of the community property as security for their debts in order to promote increased extension of credit to them, now have that credit in double measure. Those who used to argue against the inequality of the old Article 2403 of the Civil Code now urge the courts to invoke strict interpretation. It is the best of all possible worlds for the creditors." (Footnotes omitted.) (Emphasis added.)