**FEDERAL DEPOSIT INSURANCE CORPORATION, Receiver for Delta Savings and Loan Association, Resolution Trust Corporation, As Receiver of Delta Savings and Loan Association, F.A.**

v.

**Cathy F. KEMP, wife of, Duncan S. Kemp, III, Ferol Fitzmorris Rogers, wife of, Orlin Shorty Rogers, Pat Lee Daye, wife of, Jere M. Daye, Phyllis Breeland George, wife of, Don George.**

Civ. A. No. 90–3959.

United States District Court,
E.D. Louisiana.

May 23, 1991.

Roy Stuart Lilley, Lilley & Lightfoot, Metairie, La., for Federal Deposit Ins. Corp.

Julie E. Schwartz, Shannon Skelton Holtzman, Liskow & Lewis, New Orleans, La., for Resolution Trust Corp.

Edmond W. Shows, Shows, Cohn & Cali, Baton Rouge, La., for Cathy F. Kemp and Duncan S. Kemp, III, Pat Lee Daye and Jere M. Daye.

Cecil M. Burglass, Jr., Stephen Fitchie Cameron, Law Offices of Cecil M. Burglass, Jr., New Orleans, La., for Ferol Fitzmorris Rogers and Orlin Shorty Rogers.

Peter Scott Michell, New Orleans, La., for Phyllis Breeland George and Don George.

1. As per direction of the Court, Judgment was entered herein by the Clerk on this 23rd day of May, 1991.

## REASONS FOR JUDGMENT [1]

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on Motion of Plaintiff, Resolution Trust Corporation as Receiver for Delta Savings and Loan Association, F.A. (hereafter "Receiver") for Summary Judgment against defendants, Cathy F. Kemp, Duncan S. Kemp, III, Pat Lee Daye, Jere M. Daye, Ferol Fitzmorris Rogers, and Phyllis Breeland George *in solido* for nine sixteenths of the total judgment rendered against Hammond East Development Partnership on March 9, 1990, as amended March 15, 1990, that is judgment against each of the remaining co-guarantors aforementioned in the amount of $608,432.59, plus attorney's fees and costs of collection as provided in the written guarantees executed by each.

Defendant Phyllis Breeland George also filed a Cross–Motion for Summary Judgment against the plaintiff Receiver to dismiss its claim against her as a matter of law.

The matters were scheduled for oral hearing on Wednesday, May 15, 1991, but were submitted on briefs without oral argument.

### I. *UNDISPUTED FACTUAL BACKGROUND*

In June 1985, Delta Savings & Loan Association, Inc. ("Delta") loaned the Hammond East Development Partnership ("Hammond") the sum of $1,050,000.00. Cathy F. Kemp, wife/of and Duncan S. Kemp, III, Pat Lee Daye, wife/of and Jere M. Daye, Ferol Fitzmorris Rogers and Don George executed separate contracts entitled "Continuing Guaranty." Said contracts purport to bind above named guarantors *in solido* with principal obligor Hammond for indebtedness in the event of default for up to $1,100,000.00 together with interest, fees, and charges of whatsoever nature and kind.[2]

2. See, Contracts of Continuing Guaranty submitted *in globo* as Plaintiff's Exhibit 5.

Contracts of Continuing Guarantee were executed by sixteen individuals on the dates indicated below:

(1) "Continuing Guaranty By: Porter S. Horgan and Lynn Harris Horgan" on June 11, 1985;

(2) "Continuing Guaranty By: Jere M. Daye and Pat Lee Daye" on June 14, 1985;

(3) "Continuing Guaranty By: James J. Gallagher and Judith Pickle Gallagher" on June 14, 1985;

(4) "Continuing Guaranty By: Duncan S. Kemp and Cathy F. Kemp" on June 11, 1985;

(5) "Continuing Guaranty By: Don George and Salvador A. Tallo" partners in a partnership T.G. Ltd., a member of the partnership Hammond East Development on June 7, 1985;

(6) "Continuing Guaranty By: Wm. John Dawson and Bonnie Reaux Dawson" on June 14, 1985;

(7) "Continuing Guaranty By: Orlin Shorty Rogers and Ferol Fitzmorris Rogers" on June 11, 1985; and

(8) "Continuing Guaranty By: Gerald DeRoche and Evelyn DeRoche" on June 7, 1985.[3]

Yet another contract of "Continuing Guaranty: By Don George" was executed as indicated by Don George as guarantor (i.e. singular) on December 17, 1987.[4] This second guaranty executed by Don George, unlike that executed by the Kemps, the Dayes, and the Rogers, refers only to Don George as a sole "guarantor." Neither Phyllis Breeland George his wife at the pertinent time, nor Johyne George from whom he was legally divorced, appeared therein as "guarantor[s]". The provisions of said second guaranty reads consistently throughout guarantor, whereas, in the continuing guarantees executed by the Horgans, the Rogers, the DeRoches, the Kemps, the Dayes, the Gallaghers, and the Dawson's both husband and wife appear therein, sign said agreements and are referred to consistently throughout as guarantors. It is undisputed that the continuing guaranty executed by Don George on December 17, 1987 was not signed by Phyllis Breeland George.

Each of the continuing guarantees provide in pertinent part:

Guarantors[5] hereby bind and obligate themselves, their heirs and assigns, *in solido* with said debtor, for the payment of said indebtedness, precisely as if the same had been contracted and was due or owing by Guarantors individually.... [6]

On June 11, 1985, in connection with the loan to Hammond, a collateral mortgage note, a pledge of collateral mortgage, and a promissory note was executed by Hammond in favor of Delta in the loan amount, with interest at the rate of 13% per annum. On January 12, 1988, Hammond executed an additional collateral mortgage, collateral mortgage note and an additional pledge as further security on the $1,050,000.00 indebtedness.

Unable to make payments when due on the promissory note, Hammond defaulted on the loan. In the matter entitled *"Delta Savings & Loan Association, F.A. v. Hammond East Development Partnership,"* CA No. 89–3918 c/w 89–3919, 1990 WL 28190 this Court rendered judgment in favor of the Receiver and against Hammond in the principal amount of $806,657.94, plus interest thereafter at a per diem rate of $291.29 until paid, plus attorney's fees of $12,370.25, plus costs. The judgment further recognized the Receiver's collateral mortgages and directed that the mortgaged properties be seized and sold.[7]

The mortgaged property was then seized and sold for $196,400.00 pursuant to federal Writ of Execution with appraisal and

---

**3.** *Id.*

**4.** *Id.*

**5.** The sole exception to this is Don George's continuing guaranty executed December 17, 1987, which reads: "Guarantor [singular] hereby binds and obligates himself...."

**6.** See, supra note 2.

**7.** Copies of the Original and Amended Judgments were submitted *in globo* as Plaintiff's Exhibit "6".

pursuant to ordinary process.[8] After deducting the cost of sales and commissions, the judgment was subject to a credit of $191,160.14.

The Judgment of the Court credited amounts received by the Receiver from the releases of certain guarantors, which preceded it. Currently due and owing to the Receiver is $803,935.39, plus costs and interest, due to a credit of $191,160.14. Any remaining guarantors, therefore, would be liable for nine-sixteenths of the full indebtedness (without amounts credited from the releases) which amounts to $608,432.50. This figure has been calculated by adding to the amount of the Court's judgment the credits from released guarantors for a total of $1,081,657.94, and then multiplying by nine-sixteenths, to arrive at a total remaining indebtedness of $608,432.59.

The Receiver has provided figures of debit and credit, that are specific, thorough, fully itemized and documented. Defendants do not dispute that the Receiver's accounting is accurate, rather the dispute centers around the applicable law, for example whether rules of suretyship or the rules of solidarity apply under the undisputed facts.

In 1986 and 1987, Delta executed documents whereby, seven of the sixteen original sixteen guarantors were released.[9] On the same day that Delta released Salvador Tallo, one of two partners in T.G., Ltd. along with Don George, Don George appeared and executed a second guarantee on behalf of "himself" as "guarantor" [i.e., singular], binding himself *in solido* for the debts of Hammond.

Thereafter, voluntary personal bankruptcies were filed by the Horgans, Orlin "Shorty" Rogers, and Donald George.[10]

Thus, the guarantors remaining against whom the Receiver seeks to recover the remaining indebtedness are as follows:

(1) Cathy F. Kemp

(2) Duncan S. Kemp, III

(3) Pat Lee Daye

(4) Jere M. Daye

(5) Ferol Fitzmorris Rogers

Though the Receiver submitted that Phyllis Breeland George is a remaining guarantor, there is no continuing guarantee agreement in evidence substantiating her characterization as such, and for reasons which will appear further on in this opinion and the applicable law, her name has been omitted from the above listing.

Don George and Phyllis George left the State of Louisiana on or about August 1, 1989, disposed of all community property existing between them, presently reside in the State of Massachusetts and Don George filed bankruptcy proceedings in Massachusetts. In short, a community regime between the two is no longer extant. Don George has, as previously mentioned, filed bankruptcy proceedings (Chapter 7) in the Eastern District of the State of Massachusetts, thus rendering himself "judgment proof."

## II. THE LAW

1. *Continuing Guaranty = Suretyship.*

■ The most recent statement of the Louisiana Supreme Court regarding con-

---

**8.** The uncontroverted affidavit of Bill McGinnis (Plaintiff's Exhibit 13) attests to the fact that the mortgaged property was sold with appraisal. No documents or other competent evidence was submitted disputing that the proceedings against Hammond were pursuant to ordinary process. Moreover, said prior suits are records of this Court.

**9.** On October 24, 1986, the Gallaghers were released from their continuing guarantee in exchange for payment of $25,000.00. On April 9, 1987, the DeRoches were released from their continuing guarantee in exchange for the payment of $175,000.00. On December 10, 1987, the Dawson's were released from their continuing guarantee without payment. And on De-

cember 17, 1987, Salvador Tallo was released from his continuing guarantee in exchange for the payment of $75,000.00. Plaintiff submitted copies of the above mentioned release documents as its *in globo* Exhibit "7". Said documents expressly reserve the Delta's right "to proceed against all other co-obligors, solidary obligors, and all other parties for any and all claims, demands, causes of action and liabilities arising out of any transaction entered into by and between Delta Savings and Hammond East Development Partnership."

**10.** Plaintiff submitted Bankruptcy Pleadings in the case of the Horgans, Orlin Rogers and Don George attached to its motion as *in globo* Exhibit "8".

tracts of continuing guaranty and the law applicable thereto is *First National Bank of Crowley v. Green Garden,* 387 So.2d 1070, 1073 (La.1980) which held that continuing guarantees are contracts of suretyship.

The issue before the *Green Garden* court was the effect of the release of one co-guarantor on another co-guarantor's liability, both having executed contracts of continuing guaranty. The Court ultimately held based on contractual provisions essentially identical to the contracts of continuing guaranty at issue in the instant case, that discharge of one surety did not release the other surety's liability for the payment in full of Green Garden's [the principal obligor's] indebtedness.[11]

Justice Dixon explained in his concurring opinion that "each guarantor obligates himself for the payment of the indebtedness of Green Garden as if he himself (the guarantor) personally owed the money, making himself a party to the principal obligation and agreeing to pay the bank the full amount of Green Garden's indebtedness, plus interest and fees, upon demand." *Id.* at 1074.[12]

The dissenting opinion in *Green Garden* authored by Justice Calegero cites the Louisiana Supreme Court's earlier precedent in *Louisiana Bank and Trust Co. of Crowley v. Boutte,* 309 So.2d 274 (La.1975), for the proposition that codal provisions of governing solidary obligors should be used to determine the effects of suretyship be-tween the creditor and the surety who has bound himself in solido with the principal debtor. *Id.* at 1080 (dissenting opinion and emphasis as in original).

It is noteworthy that defendants in this case suggest in opposition memorandum that *Boutte,* supra, is the applicable law in effect at the time the continuing guarantees in the case at bar were executed.[13] Thus, defendants urge this Court to adopt the rule that the Louisiana codal provisions pertaining to solidarity as opposed to the rules of suretyship control the outcome of this case.

■ Defendants in this case do not contest the calculations made by Receiver but rather assert based on *Boutte* and the rules of solidarity, the Court further reduce the debt in the case at bar, in accordance with Louisiana Civil Code Article 1806 —that is "$\frac{4}{16}$ths of the entire amount sought by plaintiff should be subtracted from the debt, and all of the solvent co-debtors, including the seven (7) released co-debtors, should contribute $\frac{1}{12}$ of the $\frac{4}{16}$ portion.... Each individual co-debtor be responsible to the creditor for $\frac{1}{12}$ of the reduced portion...." [14]

This Court disagrees with defendants argument set forth above, in light of the fact that the majority of the Louisiana Supreme Court in *Green Garden* appears to have taken a position diametrically opposed to its earlier pronouncement in *Boutte.* Essentially, *Green Garden* overruled *Boutte*

**11.** See also, *GATX Aircraft Corp. v. M/V Courtney Leigh,* 768 F.2d 711, 717–718 (5th Cir.1985) [upholding summary judgment of the vessel owners which the guarantors appealed]. The *GATX* court cited *Green Garden* for the proposition that the liability of co-debtors or guarantors under the Louisiana Civil Code could be altered by the terms of a written contract and stating that the Louisiana Supreme Court unequivocally held in *Green Garden* that the liability of any guarantor extends to the entire obligation being guaranteed if the contract between the parties so provides. Moreover, the Fifth Circuit provided at note 3 that Louisiana Civil Code Article 1803 (effective January 1985) now stipulates the same result **even if the contract does *not* so provide.**

**The contracts of continuing guarantee in the case at bar were executed after January 1985 the effective day of article 1803.**

**12.** The contractual language which Justice Dixon was referring to stated:

'I do furthermore bind and obligate myself, my heirs and assigns, in solido with said debtor, for payment of said indebtedness precisely as if the same had been contracted and was due or owing by me in person, ... making myself a party thereto, hereby waiving all notice including notice of any such indebtedness....' *Green Garden,* 387 So.2d at 1074 (concurring opinion).

**13.** See, Opposition Memorandum Submitted on behalf of the defendants, the Kemps and the Dayes, at p. 3, para. 3.

**14.** *Id.* at pp. 3–4.

*sub silentio.* This is made apparent by the fact that the *Green Garden* dissent cites *Boutte* for its authority.

Defendants in this case executed the continuing guaranties at issue after the *Green Garden* decision issued, and therefore it controls the issue before the Court, that is the rights of creditor vis a vis surety.

Under the undisputed facts of the present case defendants, the Kemps, the Dayes, and Ferol Rogers signed separate but identical documents entitled "Continuing Guaranty." Each guaranty was for indebtedness up to an amount of $1,100,-000.00 together with interest, fees and charges. Each continuing guarantee reads in pertinent part:

> Guarantors hereby bind and obligate themselves, their heirs and assigns, *in solido* with said debtor, for the payment of the said indebtedness, precisely as if same had been contracted and was due or owing by Guarantors individually....

■ Louisiana law is that the remission of debt as to one surety releases the other sureties only to the extent of the contribution the other sureties might have recovered from the surety to whom the remission was granted. La.Civ.Code, Art. 1892. In the case at bar, release of 7 of the 16 original guarantors, releases ⁷⁄₁₆ths of the indebtedness. Article 3056 of the Louisiana Civil Code provides that insolvency of a cosurety is to be borne proportionately by the remaining solidary obligors. In other words, the insolvency of 4 of the obligors in the case at bar, remits no portion whatsoever, of the remaining indebtedness.

In answer to the legal question before the Court [i.e. whether and to what extent, remaining co-guarantors are liable in light of the fact that 7 of the original 16 were released and 4 of the original 16 declared bankruptcy, each of the remaining co-guarantors remain liable for ⁹⁄₁₆ths of the remaining indebtedness—that is $608,432.59.

**2.  *The Louisiana Deficiency Judgment Act Applies only to Sales Pursuant to Executory Process.***

■ In *Guaranty Bank of Mamou v. Community Rice Mill, Inc.,* 502 So.2d 1067 (La.1987), the Louisiana Supreme Court determined that the Deficiency Judgment Act applies only to sales of mortgaged property pursuant to Writ of Sale and Seizure following an executory proceeding. It is undisputed in the present case, that the sale of mortgaged property was pursuant to federal Writ of Seizure following ordinary process. Therefore, defendants' suggestion that the Act should apply to the case at bar is not supported by Louisiana law.

■ Even if the Court were to assume that the provisions of the Deficiency Judgment Act did apply to facts of this case, a debtor is precluded from contesting the validity of the sale and specifically precluded from raising the issue of validity of the appraisal, where debtor knew of the sale and failed to timely attack it. *Bank of New Roads v. Livonia South, Inc.,* 527 So.2d 1132, 1135 (La.App. 1st Cir.), *cert. denied,* 532 So.2d 150 (La.1988); and *Association of Lake Charles v. Morrow,* 469 So.2d 424 (La.App. 3rd Cir.), *cert. denied,* 474 So.2d 1304 (1985).

■ In the case at bar, the United States' Marshall's return on the Writ of Execution [Plaintiff's Exhibit "1" to its Reply Brief) shows that all of the requirements for an appraisement were met.[15] There is simply no evidence submitted even suggesting that any of the defendants were not served with Writ of Execution or that any of the defendants raised the issue of the validity of the sale or the appraisal prior to the sale of mortgaged property.

**3.  *Continuing Guaranty By Don George on December 17, 1987.***

■ The precise holding in *Rayne State Bank and Trust Co. v. Fruge,* 546 So.2d 637 (La.App. 3rd Cir.1989), *cert. denied,* 551 So.2d 1319 (La.1989) is that:

> that all of the requirements of an appraisement were met. *Livonia South,* 527 So.2d at 1135.

**15.** There is a presumption in favor of the legality where the sheriff's return shows on its face

A continuing guaranty, treated jurisprudentially as a contract of suretyship, is an accessory contract by which a person binds **himself** to a creditor to fulfill the obligation of another upon failure of the latter to do so. LSA–C.C. Art. 3035. **Considering the foregoing, it is clear that Mrs. Fruge's guaranty did** *not* **encumber the community.** Accordingly the concurrence of Mr. Fruge was not required.

Moreover, once Rayne State obtained its **judgment against Mrs. Fruge** [guarantor], the judgment could be satisfied **during the community property regime from the community property** and from Mrs. Fruge's separate property. LSA C.C. Art. 2345. (emphasis supplied).

█ The above cited statement in *Rayne* indicates that a contract of continuing guarantee is separate debt of the guarantor. Judgment against such guarantor can however be satisfied from community property "**during the community property regime.**"

In *Rayne*, supra, Rayne State Bank and Trust Company obtained a judgment against Mrs. Fruge on her continuing guarantee in favor of said bank. There was no judgment against Mr. Fruge on the continuing guarantee executed by his wife.

Also, in *Shel–Boze, Inc. v. Melton*, 509 So.2d 106, 107 (La.App. 5th Cir.1987), there was only judgment against Mr. Melton on his continuing guarantee, and no judgment against the wife who apparently was not a party to the guarantee at issue in that case. The court states candidly in *Shel–Boze* that the record was not clear whether the obligation incurred by Mr. Melton was a community debt. *Id.* at n. 1.

The issue in both *Rayne* and *Shel–Boze*, supra, was whether the judgment against a guarantor spouse could be enforced against community property. Neither *Rayne* nor *Shel–Boze*, supra, stand for the proposition that a continuing guarantee executed by one spouse as guarantor is a community obligation. Nor can either case be read as authority for rendering judgment against a spouse who did not appear as guarantor and execute the continuing guaranty. In fact, *Rayne* cited above indicates that the judgment rendered against Mrs. Fruge did *not* encumber the community.

In the case at bar it is not disputed that the plaintiff Receiver cannot proceed to judgment as to Don George, guarantor pursuant to the December 17, 1987 continuing guaranty executed in favor of Delta, because he has filed Chapter 7 Bankruptcy Proceedings. In other words, there can be no judgment against said guarantor with which to execute against any remaining community assets of the Georges, or any community regime if it were still in existence.

It is not disputed in the present case that defendant Phyllis Breeland George neither appears as guarantor, nor executed the continuing guaranty dated December 17, 1987. That she was married to Donald George at the pertinent time, is immaterial, except in the event it was possible to obtain a judgment against Mr. George as guarantor, said judgment could be satisfied from community property during the existence of the community regime.

Considering the holding in *Rayne*, there is no precedent for judgment against Phyllis Breeland George on the continuing guarantee by her husband Don George in favor of Delta.

In any event, Article 2345 of the Louisiana Civil Code, cited in *Rayne*, specifically provides:

A separate or community obligation may be satisfied **during the community property regime from community property** and from separate property of the spouse who incurred the debt. (emphasis supplied).

There is no codal provision for the satisfaction of the separate obligation from community property after the termination of the community property regime. Any right to satisfaction of Don George's separate debt from community property became moot upon his bankruptcy and/or upon termination of the community regime.

For all of the aforesaid reasons, there being no material issues of fact remaining

**518**

for trial on the merits,[16] this Court has: (1) granted summary judgment in favor of the plaintiff Receiver and against defendants, Cathy F. Kemp, Duncan S. Kemp, III, Pat Lee Daye, Jere M. Daye, and Ferol Fitzmorris Rogers holding them liable *in solido* in the amount of $608,432.59, plus attorneys fees and costs; (2) denied plaintiff Receiver's motion for summary judgment against defendant Phyllis Breeland George; and (3) granted cross-motion for summary judgment in favor of defendant Phyllis Breeland George and against plaintiff Receiver, dismissing its claim against said defendant at plaintiff Receiver's costs.

---

**16.** The district court may appropriately enter summary judgment if the pleadings, responses to discovery, together with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law. *GATX Aircraft Corp. v. M/V Courtney Leigh,* 768 F.2d 711, 714 (5th Cir.1985).