United States Court of Appeals,

Fifth Circuit.

Nos. 94-40176, 94-40424

Summary Calendars.

FARM CREDIT BANK OF TEXAS, Plaintiff-Appellee,

v.

André C. FARISH, Defendant-Appellant,

FEDERAL LAND BANK OF JACKSON, In Receivership f/k/a Federal Land
Bank of New Orleans, Plaintiff,

v.

André C. FARISH, Defendant Counter Claimant-Appellant,

v.

FARM CREDIT BANK OF TEXAS, Counter-Defendant-Appellee.

Sept. 16, 1994.

Appeals from the United States District Court for the Western
District of Louisiana.

Before GARWOOD, SMITH and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

The Farm Credit Bank of Texas (FCBT) sued André C. Farish to
recover payment on a defaulted loan. After a bench trial, the
district court ruled in favor of the FCBT. In a separate suit
involving the same facts, Farish sued the FCBT for damages and
injunctive relief. The same district court granted FCBT summary
judgment. Having consolidated Farish's appeals, we now affirm the
district court's two rulings.

I.

A.

1

We begin by reciting the facts and procedure relevant to case number 94-40176, which is Farish's appeal of FCBT's suit against him. In 1980, pursuant to the Farm Credit Act of 1971, 12 U.S.C. §§ 2001-2279bb-6, Farish borrowed $355,000 from the Federal Land Bank of New Orleans (FLB) and executed a promissory note and a mortgage affecting real property in Louisiana. As a condition to obtaining the loan, the Act required Farish to purchase 3,550 shares of FLB stock at a par value of $5 per share. The statute also provided that upon repayment or default, the stock was to be cancelled and a credit in the amount of the book value thereof applied to the loan balance. 12 U.S.C. § 2034. The Farm Credit Act also provided that the FLB would have (1) first lien on the stock for the payment of any liability of the shareholders and (2) the discretion to cancel the stock when the debtor defaulted. 12 U.S.C.S. § 2054. In 1986, Farish stopped making payments on his loan. The FLB declared the loan to be in default and accelerated his note. Farish then attempted to pursue loan restructuring under the Farm Credit Act, whereby he requested that the FLB provide an appraisal of the mortgaged real property. The FLB denied Farish's restructuring proposal and advised Farish of its intention to move forward with foreclosure proceedings. In order to reduce Farish's outstanding loan balance, Farish agreed that his FLB stock would be cancelled. In June 1989, the FLB cancelled the stock and applied the par value to his delinquent loan balance.

The FLB then informed Farish of his right to request review of the FLB's decision and directed him to submit a request no later

than June 23, 1989. But Farish did not respond until June 26, 1989. Three months later, the FLB sued Farish in state court to foreclose the real property mortgage and recover the delinquent balance of the note. Farish responded by seeking to enjoin the FLB's collection efforts. The state court ruled in favor of Farish in August 1990. The court temporarily enjoined the FLB from foreclosing because the FLB had not given him adequate time under the Farm Credit Act to request review. The court's ruling meant that the FLB was enjoined from foreclosing until it complied with the Farm Credit Act's procedures. The state court *did not* say that the FLB could never collect. The FLB ultimately assigned its rights and obligations under the note and mortgage to the FCBT and moved to dismiss the state foreclosure suit. The state court granted the FLB's motion to dismiss. Shortly thereafter, the FCBT sent two loan restructuring application packages to Farish informing him of his rights under the Farm Credit Act to pursue another restructuring application. Farish again failed to respond. The FCBT therefore filed this diversity suit in January 1992, seeking collection of the outstanding balance on the loan that the FLB had assigned to it.

Farish answered by admitting the factual allegations of the FCBT's complaint but asserting that the federal district court should have abstained from considering the FCBT's suit because it is governed by the Louisiana Deficiency Judgment Act (LDJA), LA.REV.STAT.ANN. § 13:4106, and *not* the Farm Credit Act. He argued that the LDJA prohibits creditors from obtaining a deficiency

3

judgment against him for any amount remaining due after applying the cancelled stock to the loan balance. Under the LDJA, a creditor who takes advantage of a waiver of appraisement and sells a debtor's property in an executory proceeding is prohibited from subsequently obtaining a judgment against that debtor. *Id.* § 13:4106A. In effect, the creditor accepts the property of the original sale as full payment and satisfaction of the debt.

In addition to his LDJA argument, Farish raised two estoppel arguments. He first argued that the FCBT should be estopped from collecting the balance on the loan because the FLB failed to comply with the borrowers' rights provisions of the Farm Credit Act. He also asserted that the FCBT should be estopped from collection based on its own failure to comply with the Farm Credit Act.

After a bench trial, the district court ruled in favor of the FCBT in January 1994. The court first reasoned that, because the FLB proceeded against Farish's stock pursuant to the federal statute—and not by state law executory process—the LDJA was inapplicable. Therefore, the FLB's cancellation of Farish's stock did not extinguish his obligation under the note. Second, the court found that the FLB's actions did not bar the FCBT's efforts to collect because the state court's ruling was limited to the FLB's original collection efforts and *not* the FCBT's present efforts. Finally, the court summarily dismissed Farish's final argument that the FCBT had not complied with the Farm Credit Act. Because Farish never particularized this allegation, the court concluded that it was not obligated to consider this argument.

4

Farish now appeals the court's ruling.

B.

We now recite the details of case number 94-40424, which is Farish's appeal of his suit against the FCBT. The facts of this case are the same but the procedural history, obviously, is different. In October 1993, just before trial was to begin in the FCBT's foreclosure suit, Farish sued the FCBT in state court, seeking damages and injunctive relief under the Agricultural Credit Act, which was passed in 1987 and amended the Farm Credit Act. The FCBT removed Farish's suit to federal district court, whereupon Farish moved to remand the case to state court. The FCBT, meanwhile, moved for summary judgment, asserting that the Agricultural Credit Act did not provide Farish a private right of action.

In January 1994, the district court stayed proceedings in Farish's suit (No. 94-40424) until the FCBT's foreclosure suit (No. 94-40176) was resolved. After ruling in favor of the FCBT in its foreclosure suit, the court then resumed proceedings in Farish's suit against the FCBT. The court first denied Farish's motion to remand in April 1994, concluding that the FCBT had properly removed Farish's suit against it. The court then granted the FCBT summary judgment on the ground that the Agricultural Credit Act does not provide borrowers a private right of action. Farish also appeals this ruling. We have consolidated his two appeals.

II.

As to the FCBT's foreclosure suit (No. 94-40176), Farish

5

appeals two issues: (1) the district court's conclusion that the LDJA does not apply, and (2) the district court's conclusion that the FCBT is not estopped from foreclosing because of the FLB's previously enjoined collection efforts. We will discuss each in turn.

A.

Farish primarily argues in this appeal that the district court improperly concluded that the Farm Credit Act governs this dispute. Instead, he argues, the court should have concluded that the LDJA governs the FCBT's claim. He further claims that, because the FCBT's suit involves the application of state law (i.e., the LDJA), the district court should have abstained from considering the suit.

We review questions of law de novo. *Sockwell v. Phelps,* 20 F.3d 187, 190-91 (5th Cir.1994). We find that the district court properly concluded that the LDJA does not apply to the FCBT's suit. The Louisiana Supreme Court has established that the LDJA applies *only* to situations in which a debtor's property is sold pursuant to a writ of sale and seizure following an executory proceeding.[1] *Guaranty Bank of Mamou v. Community Rice Mill,* 502 So.2d 1067, 1070 (La.1987); *FDIC v. Kemp,* 766 F.Supp. 511, 516 (E.D.La.1991). An executory proceeding is a judicial sale where there has been no judgment rendered in favor of the creditor. *Id.* The LDJA,

---

[1]The LDJA would otherwise prevent a creditor from subsequently obtaining a deficiency judgment against the debtor because the creditor effectively accepts the sold property (whatever the value) as full payment of the debt. LA.REV.STAT.ANN. § 13:4106A.

however, does not protect Farish from his obligation under the note because the stock was cancelled pursuant to the Farm Credit Act, which governed this transaction from the beginning.[2] Specifically, the Act requires that, in return for the loan from the Federal Land Bank, the borrower must purchase a specified amount of stock in the bank. The stock is purchased at $5 per share, and the total stock purchase must equal five to ten percent of the loan. Furthermore, the Act explicitly sets forth the mechanics and remedy by which the debtor's stock can be utilized as a source of payment towards the loan in the event of default, and does not call for a "sale" of the stock. The Act permits the bank to cancel the borrower's stock and apply its value to the outstanding balance of the loan. Additionally, federal regulations specifically provide for the cancellation of the FLB stock upon a borrower's default.[3]

This procedure was contemplated in the original loan agreement between the FCBT and Farish and is uncontested by either party. The Farm Credit Act *does not* require the creditor to pursue any

---

[2]If a stockholder defaults on his loan, the Farm Credit Act permits a federal land bank to cancel the debtor's stock and apply the proceeds to the loan balance. 12 U.S.C. § 2034(a).

[3]The regulations state in relevant part:

> When the debt of a holder of eligible borrower stock issued by a production credit association, Federal land bank association or agricultural credit association is in default, such institution may, but shall not be required to, retire at par value eligible borrower stock owned by such borrower on which the institution has a lien, in total or partial liquidation of the debt.

12 C.F.R. § 614.5280(a).

7

state foreclosure proceeding before enforcing its first lien against Farish's stock because the Act gives the lender the sole discretion to cancel upon default or repayment. Thus, the fact that the FLB failed to appraise Farish's stock is irrelevant. The Farm Credit Act *does not* require any appraisal of the stock purchased by Farish. In fact, an appraisal would be superfluous, since the agreed upon price of the stock was $5 per share, and the value was fixed by the Act despite any perceived change in "market" value. Further, no market exists in which to trade this stock. Even if the stock, somehow, reflected a value of $1, or even $100, the FCBT and Farish agreed that the stock would be redeemed at $5 per share. When Farish defaulted on his loan, the FCBT cancelled Farish's stock at par value ($17,500) pursuant to the agreed-upon terms of the loan and the Farm Credit Act.[4] An appraisal of the stock would not provide the debtor any change in value, or added protection from an overreaching creditor. In other words, under these circumstances an appraisal would be meaningless. Therefore, Farish's argument that the LDJA applies to extinguish the remaining balance of his loan is misplaced because the LDJA has no application to this transaction.[5]

---

[4]When Farish defaulted on his loan, the FLB was in receivership and his stock was completely worthless. Nevertheless, the FLB cancelled his stock at par value.

[5]Our holding additionally means that Farish's appeal of the district court's denial of his motion to abstain is moot. In particular, Farish argued that the district court should have abstained because this suit is governed by *state* law. Because we find that the suit is, in fact, governed by *federal* law, no conceivable grounds for abstention exist.

Moreover, even if the LDJA were applicable, it would be preempted by the Farm Credit Act. Federal law preempts state law where, as here, "the federal legislation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation," and where the state law "stands as an obstacle to the accomplishment and execution of the full purpose of Congress." *Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985). Because the Farm Credit Act governs the treatment of FLB stock from its issuance to its cancellation, and because the LDJA conflicts with the Farm Credit Act procedures to the extent that it frustrates the cancellation of FLB stock, federal law preempts state law and dictates the manner in which all of the stock is cancelled. Therefore, we affirm the district court's conclusion that the LDJA was inapplicable and hold that Farish's obligations under the note are not discharged.

B.

Farish next argues the state court's injunction of the FLB's collection efforts bars the FCBT from attempting to collect on the note. Farish's argument, however, misconstrues the nature of the state court's ruling. When the state court issued its injunction against the FLB, the court made clear that its ruling applied only to the FLB's collection efforts at that time. Specifically, the state court ruled that the FLB had not complied with the borrowers' rights provisions of the Farm Credit Act and ordered the FLB to so comply before pursuing foreclosure. Thus, even if the FLB had

9

never assigned the note, it would not have been barred from pursuing foreclosure, *provided* the FLB gave Farish more time under the Farm Credit Act.

After the FLB assigned the note, the FCBT made independent efforts to comply with the provisions of the Farm Credit Act and accommodate Farish. The state court indicated that the FLB's failure to provide Farish enough time under the Farm Credit Act was precisely the reason it issued the injunction. Thus, the FCBT, as the FLB's successor-in-interest, complied with the court's ruling: it provided Farish with more time. Farish, however, never responded, thereby sealing his fate.[6] We therefore affirm the district court's conclusion that the FCBT's collection efforts are not estopped because the state court enjoined the FLB's collection efforts.

## III.

As to his suit against the FCBT (No. 94-40424), Farish appeals two issues: (1) the district court's denial of his motion to remand, and (2) the district court's summary judgment for the FCBT. We again will discuss each in turn.

## A.

Farish first contends that the FCBT's removal of his suit was improper under 28 U.S.C. § 1446(b). Section 1446(b) states that "a case may not be removed on the basis of jurisdiction conferred by

---

[6]Farish did not respond to FCBT's August 1990 communication regarding his right to pursue restructuring. At trial, he asserted that he did not receive either of the mailings. The court, however, found that Farish *did* receive at least the communication delivered by certified mail.

10

section 1332 of this title more than 1 year after commencement of the action." *Id.* Farish's claim is meritless. We agree with the district court that October 1993, which was when Farish filed his suit in state court against the FCBT, represents the controlling time for determining removal under § 1446(b). Under Louisiana law, Farish's suit constituted a separate and independent cause of action. Once the state court dismissed the FLB's foreclosure suit without prejudice in September 1990 *and* the FLB assigned its rights to the FCBT, Farish was required to file a new cause of action. *Barracliff v. East Jefferson Gen. Hosp.,* 573 So.2d 1200, 1203 (La.App.1991) ("[w]here there are no other viable defendants remaining in the original suit, a new suit is required"). Thus, when the FCBT removed Farish's suit in November 1993, only one month had elapsed from the time Farish had filed suit, a period which is well within § 1446(b)'s one-year time constraint. We therefore affirm the district court's denial of Farish's motion to remand.

B.

Farish also appeals the district court's summary judgment for the FCBT. We review a summary judgment de novo. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 177 (5th Cir.1990). The district court, relying on various other circuits, concluded that the Agricultural Credit Act does not vest borrowers with standing to enforce provisions of the Act through law suits and granted summary judgment on that basis. *See Saltzman v. Farm Credit Services,* 950 F.2d 466 (7th Cir.1991); *Zajac v. Federal*

11

*Land Bank,* 909 F.2d 1181 (8th Cir.1990) (en banc); *Griffin v. Federal Land Bank,* 902 F.2d 22 (10th Cir.1990); *Harper v. Federal Land Bank,* 878 F.2d 1172 (9th Cir.1989). We join our sister circuits in holding that the Agricultural Credit Act contains no express or implied right of action for borrowers. As the Seventh Circuit pointed out in *Saltzman,* Congress clearly limited borrowers' remedies to those administrative remedies contained in the Act. *Saltzman,* 950 F.2d at 467-69. We therefore affirm the district court's summary judgment for the FCBT.

## IV.

For the reasons stated above, the district court's rulings in No. 94-40176 and No. 94-40424 are AFFIRMED.